**KOLLER LAW LLC**
David M. Koller, Esq. (90119)
Jordan D. Santo, Esq. (320573)                            *Counsel for Plaintiff*
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
T: (215) 545-8917
F: (215) 575-0826
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| SHIRLENE KROMER, | : | **Civil Action No.** |
| **Plaintiff,** | : | |
| | : | |
| v. | : | **Complaint and Jury Demand** |
| | : | |
| PRIMO BRANDS CORPORATION, | : | |
| **Defendant.** | : | |

**CIVIL ACTION**

Plaintiff, Shirlene Kromer (hereinafter "Plaintiff"), by and through her attorney, Koller

Law, LLC, bring this civil matter against Primo Brands Corporation (hereinafter "Defendant"), for

violations of Title VII of the Civil Rights Act of 1964 ("Title VII"), as amended, the Age

Discrimination in Employment Act ("ADEA"), the Pennsylvania Human Relations Act ("PHRA")

and public policy.  In support thereof, Plaintiff avers as follows:

**THE PARTIES**

1. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

2. Plaintiff is an adult individual residing in Allentown, PA.

3. Upon information and belief, Primo Brands Corporation is a branded beverage company
   with a location at 405 Nestle Way, Breinigsville, PA 18031 and corporate headquarters at
   1150 Assembly Drive, Suite 800, Tampa, FL 33607.

4. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who Plaintiff alleges had the authority to make decisions concerning Plaintiff's employment. In making said decisions, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

5. At all times relevant hereto, Defendant employed managers, supervisors, agents, and employees who acted directly or indirectly in the interest of the employer. In so acting, these individuals engaged in the pattern and practice of discriminatory treatment, which forms the basis of Plaintiff's allegations in the instant Complaint.

## JURISDICTION AND VENUE

6. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

7. The Court may properly maintain personal jurisdiction over Defendant because the Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction and comply with traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in International Shoe Co. v. Washington, 326 U.S. 310 (1945) and its progeny.

8. The Court may exercise original subject-matter jurisdiction over the instant action pursuant to 28 U.S.C. §§ 1331 and 1343(a)(4) because it arises under the laws of the United States and seeks redress for violations of federal law.

9. The Court may also maintain supplemental jurisdiction over state law claims set forth herein pursuant to 28 U.S.C. § 1367(a) and Rule 18(a) of the Federal Rules of Civil Procedure because they are sufficiently related to one or more claims within the Court's original jurisdiction that they form part of the same case or controversy.

10. Venue is properly laid in the Eastern District of Pennsylvania pursuant to 28 U.S.C. §§ 1391(b)(1) and 1391(b)(2) because Plaintiff is domiciled in this judicial district, the Defendant is located in this judicial district and because all of the acts and/or omissions giving rise to the claims set forth herein occurred in this judicial district.

## **EXHAUSTION OF ADMINISTRATIVE REMEDIES**

11. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

12. Plaintiff exhausted her administrative remedies under Title VII, the ADEA and the PHRA.

13. Plaintiff timely filed a Charge of Discrimination ("Charge") with the U.S. Equal Employment Opportunity Commission ("EEOC") alleging gender and age discrimination as well as retaliation against Defendant.

14. The Charge was assigned a Charge Number 530-2026-02461 and was dual filed with the Pennsylvania Human Relations Commission ("PHRC").

15. The EEOC issued Plaintiff a Dismissal and Notice of Rights ("Right to Sue") via request relative to the Charge by request and that Notice is dated February 26, 2026. Plaintiff received the notice by electronic mail.

16. Prior to the filing of this action, Plaintiff notified the EEOC of her intent to proceed with a lawsuit in federal court.

17. Plaintiff files the instant Complaint within ninety (90) days of her receipt of her Right to Sue in this matter, as it relates to her federal law claims, and within two (2) years of the issuance of the Right to Sue in this matter as it relates to her PHRA claims.

18. Plaintiff has exhausted her administrative remedies as to the allegations of this Complaint.

## MATERIAL FACTS

### PLAINTIFF'S EMPLOYMENT HISTORY

19. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

20. Plaintiff is female and was born in 1964.

21. Plaintiff was hired by Perrier, Defendant's predecessor, in or around May 1999 in the position of Storeroom Keeper/Production Scheduler.

22. Plaintiff was 35 years old when she was hired by Perrier.

23. Perrier was eventually acquired by Nestle Waters.

24. In or around 2021, BlueTriton acquired Nestle Waters.

25. In or around November 2024, BlueTriton merged with Defendant.

26. Defendant may also be known as Nestle Waters North America, Inc. with an address at PO Box 6674, St. Louis, MO 63166.

27. Plaintiff was a long-tenured, dedicated, and loyal employee who devoted more than twenty-five (25) years of service to Defendant and its predecessors.

28. At all times relevant hereto, Plaintiff performed her job duties in a competent and exemplary manner, meeting or exceeding Defendant's legitimate performance expectations.

29. Throughout her employment, Plaintiff remained committed to Defendant despite enduring multiple corporate acquisitions, adapting successfully to new systems, management, and operational changes.

### A NEW PLANT MANAGER STARTED

30. In or around 2023, BlueTriton, Defendant's predecessor, hired Joe Clevenger (male, late 50's) as the new Plant Manager.

4

## CLEVENGER DISCRIMINATED AGAINST PLAINTIFF DUE TO HER GENDER AND AGE

31. Shortly after Clevenger arrived, Defendant commenced a campaign of discrimination and exclusion based upon Plaintiff's gender and age.

32. Clevenger fostered a "boy's club" environment in which female employees were systematically excluded from meetings, discussions, and professional opportunities.

33. Notably, there were no women in Plaintiff's department, and the average age of her coworkers were in their early forties, substantially younger than Plaintiff.

## DEFENDANT HIRED YOUNGER EMPLOYEES AND INEXPLICABLY CHOSE TO TERMINATE AN OLDER EMPLOYEE

34. During this period, Defendant consistently hired new employees in their twenties and thirties while marginalizing and disregarding older employees.

35. By way of example, Defendant previously employed two (2) Purchasers, one in his 60's and one under 40 years old.

36. Despite the older Purchaser's superior performance, Defendant terminated his employment and retained the younger Purchaser.

## PLAINTIFF APPLIED FOR THE PURCHASER POSITION, BUT DEFENDANT SELECTED YOUNGER MALE CANDIDATES INSTEAD

37. Plaintiff applied three (3) times between 2023 and her termination for the Purchaser position.

38. Plaintiff applied online through Defendant's website.

39. Plaintiff was interviewed following her first application, but was told that she was not offered the role because "not everyone liked [her]" or words to that effect.

40. Instead, Defendant hired George Wenzel (male, mid to late 40's), an external hire, for the Purchaser position.

41. Upon information and belief, Plaintiff had equal or greater qualifications, experience, and institutional knowledge than Wenzel.

42. Plaintiff's second application also resulted in an interview.

43. Defendant denied Plaintiff the position and told her it was because it did not like an answer she gave to one of the questions, or words to that effect.

44. Defendant then proceeded to hire Scott Galebach (male, mid 40's) for the Purchaser position.

45. Upon information and belief, Plaintiff equal or great qualifications, experience, and institutional knowledge than Scott.

**PLAINTIFF APPLIED FOR THE PURCHASER POSITION A THIRD TIME, BUT CLEVENGER ADDED A FULL-TIME POSITION WORTH OF JOB DUTIES FOR HER TO PROVE HERSELF**

46. In July 2025, Plaintiff applied for the Purchaser position for the third time.

47. Clevenger instead came to Plaintiff and asked her to do her job duties plus the emergency end of the purchase order creation.

48. Importantly, the emergency end of the purchase order creation is a full-time job itself.

49. Clevenger enticed Plaintiff by stating he knew Plaintiff had applied multiple times before and this would be a good way to prove it, or words to that effect.

50. Instead, Defendant repeatedly selected younger male candidates, under 40 years old for the position, notwithstanding Plaintiff's greater qualifications, experience, and institutional knowledge.

**PLAINTIFF SUFFERED A WORKPLACE INJURY AND FILED A WORKERS' COMPENSATION CLAIM**

51. In May 2025, Plaintiff sustained a workplace injury after suffering a fall and filed a workers' compensation claim.

52. Plaintiff required x-rays and follow-up medical care.

## CLEVENGER RETALIATED AGAINST PLAINTIFF FOLLOWING HER WORKERS' COMPENSATION CLAIM

53. Following the filing of her workers' compensation claim, Clevenger began subjecting Plaintiff to increased scrutiny and an escalating workload, while simultaneously reducing available staffing and resources.

## PLAINTIFF REPEATEDLY COMPLAINED ABOUT THE UNREALISTIC WORKLOAD ASSIGNED TO HER

54. Throughout July 2025, Plaintiff repeatedly raised concerns with management regarding the overwhelming and unrealistic workload that had been assigned to her.

55. Plaintiff had weekly meetings with Clevenger to go over open issues in the department.

56. Plaintiff told Clevenger that she was overwhelmed and needed help at each of these meetings.

57. However, Clevenger refused to provide the necessary assistance to Plaintiff.

## CLEVENGER TOLD PLAINTIFF HE WANTED HER TO RESIGN AND HAD HER ESCORTED OUT OF DEFENDANT

58. On or about August 1, 2025, Plaintiff was summoned to a meeting with Clevenger and Kevin Miltenberger, Operations Manager.

59. At this meeting, Clevenger harassed Plaintiff about a part not being in the drawer for the maintenance staff to pull for a breakdown.

60. At the time, Defendant stocked over 5,400 parts in the storeroom.

61. Plaintiff attempted to explain that with Defendant being short staffed, the one box was missed.

62. Clevenger proceeded to ask Plaintiff why this was the first time he had heard about Plaintiff being overwhelmed.

63. Plaintiff responded that this was not the first time and that she had told him each time during the weekly meetings that she and her coworkers could not keep up and needed help.

64. Clevenger became angry after Plaintiff made this statement.

65. In response, Plaintiff stated, "What do you want me to do, resign?" or words to that effect.

66. In response, Clevenger said, "Yes."

67. Plaintiff said she would not resign, or words to that effect.

68. Clevenger then demanded Plaintiff's badge and had Miltenberger escort Plaintiff to collect her belongings and then out of Defendant.

## PLAINTIFF COMPLAINED TO HUMAN RESOURCES, BUT WAS TOLD THAT SHE HAD RESIGNED

69. That same day, on or about August 1, 2025, Plaintiff called Antone Ward, the local Human Resources Manager.

70. Plaintiff informed Ward that she disputed being fired, or words to that effect.

71. Ward told Plaintiff he had to talk to Clevenger and that he would get back to her.

72. Thereafter, on or about August 4, 2025, Plaintiff sent an email to Ward again disputing her termination.

73. Ward did not respond to the email but called Plaintiff.

74. Ward told Plaintiff she could not appeal her termination because she had resigned, or words to that effect.

75. Plaintiff reiterated that she did not resign.

76. Ward took no further action, instead insisting, without evidence, that Plaintiff voluntarily resigned.

## PLAINTIFF COMPLAINED TO CORPORATE HUMAN RESOURCES

77. On or about August 8, 2025, Plaintiff contacted Jared Lyman, Corporate Human Resources, in an effort to clarify the situation and to request reinstatement.

78. Plaintiff explained everything that happened and Lyman stated to Plaintiff that it sounded like "things got a little heated and that [she] did not resign" or words to that effect.

79. Lyman informed Plaintiff he would contact Clevenger and Miltenberger and get back to her.

80. Plaintiff waited for Lyman to get back to her but heard nothing.

## CORPORATE HUMAN RESOURCES INFORMED PLAINTIFF THAT DEFENDANT HAD TERMINATED HER

81. On or about August 13, 2025, Plaintiff contacted Lyman asking if she could return to work.

82. Lyman responded stating that the decision to end her employment was final and she could not return to work, or words to that effect.

83. Lyman did indicate that Defendant would not challenge Plaintiff's claim for unemployment compensation because they were wrong to terminate her, or words to that effect.

84. Plaintiff was 60 years old at the time of her termination.

85. Upon information and belief, Plaintiff's position remained open.

## DEFENDANT'S DISCRIMINATORY HIRING PRACTICES

86. Defendant hired two (2) substantially younger males for the Purchaser role to which she had applied.

87. At the time of hire, Wenzel was not qualified.

88. He lasted less than one (1) year in the role.

9

89. Galebach had no purchasing experience at the time of hire and lasted approximately seven (7) months.

90. Defendant then, upon information and belief, attempted to replace Plaintiff with a younger female in her early to mid-twenties.

91. Upon information and belief, this female employee lasted five (5) days and proceeded to go back to her previous role on the production line.

92. Defendant's articulated reason that Plaintiff had resigned is false, pretextual, and designed to conceal unlawful discrimination based on age, gender and retaliation for filing a workers' compensation claim.

93. Defendant discriminated against Plaintiff due to her age and gender and retaliated against her for engaging in protected activity in violation of the ADEA, Title VII and the PHRA.

94. In addition, Defendant retaliated against Plaintiff for filing a workers' compensation claim in violation of public policy.

95. Defendant's acts and/or omissions were willful or performed with reckless disregard to Plaintiff's federal statutorily protected rights.

## COUNT I – AGE DISCRIMINATION
## <u>AGE DISCRIMINATION IN EMPLOYMENT ACT</u>

96. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

97. Plaintiff was born in 1964.

98. Plaintiff was qualified to perform the job.

99. Defendant terminated Plaintiff.

100. Defendant treated younger employees more favorably than Plaintiff.

101. Defendant has no legitimate non-discriminatory reason for its actions.

102. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as

set forth herein.

103. Defendant's conduct was willful or performed with reckless disregard to her federal statutory rights.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT II – AGE DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

104. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

105. Plaintiff was born in 1964.

106. Plaintiff was qualified to perform the job.

107. Defendant terminated Plaintiff.

108. Defendant treated younger employees more favorably than Plaintiff.

109. Defendant has no legitimate non-discriminatory reason for its actions.

110. As a result of Defendant's unlawful age discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT III – GENDER DISCRIMINATION
## TITLE VII OF THE CIVILE RIGHTS ACT OF 1964, AS AMENDED

111. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

112. Plaintiff is a member of protected classes in that she is female.

113. Plaintiff was qualified to perform the job.

114. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

11

115. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

116. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

117. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

118. Defendant terminated Plaintiff.

119. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

WHEREFORE, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra.*

## COUNT IV – GENDER DISCRIMINATION
## PENNSYLVANIA HUMAN RELATIONS ACT

120. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

121. Plaintiff is a member of protected classes in that she is female.

122. Plaintiff was qualified to perform the job.

123. Similarly situated persons outside of Plaintiff's protected classes were treated more favorably than Plaintiff.

124. Circumstances exist related to the above cited employment actions that give rise to an inference of discrimination.

125. No legitimate, non-discriminatory reasons exist for the above cited adverse employment actions that Plaintiff suffered.

126. The reasons cited by Defendant for the adverse employment actions that Plaintiff suffered are pretext for discrimination.

127. Defendant terminated Plaintiff.

128. As a result of Defendant's unlawful gender discrimination, Plaintiff has suffered damages as set forth herein.

**WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT V – RETALIATION**
**AGE DISCRIMINATION IN EMPLOYMENT ACT**

129. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

130. Plaintiff engaged in protected activity protected by the ADEA when she complained internally about age discrimination.

131. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

132. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

**COUNT VI – RETALIATION**
**TITLE VII OF THE CIVIL RIGHTS ACT OF 1964, AS AMENDED**

133. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

134. Plaintiff engaged in protected activity protected by Title VII when she complained internally about gender discrimination.

135. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

136. There exists a causal connection between Plaintiff's participation in the protected

activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VII – RETALIATION
## PENNSYLVANIA HUMAN RELATIONS ACT

137. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

138. Plaintiff engaged in activity protected by the PHRA when she complained internally about age and gender discrimination.

139. Thereafter, Defendant took adverse employment actions against Plaintiff, including, but not limited to, termination.

140. There exists a causal connection between Plaintiff's participation in the protected activity and the adverse employment action.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT VIII – WRONGFUL TERMINATION

141. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

142. Plaintiff was an at-will employee with Defendant.

143. Plaintiff was injured at work and subsequently filed a workers' compensation claim.

144. Defendant terminated Plaintiff in retaliation for filing a workers' compensation claim.

145. This is a violation of the at-will employment doctrine in Pennsylvania.

**WHEREFORE,** Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, Shirlene Kromer, requests that the Court grant her the following relief against Defendant:

(a)     Compensatory damages;

(b)     Punitive damages;

(c)     Liquidated damages;

(d)     Emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest;

(h)     An allowance to compensate for negative tax consequences;

(i)     A permanent injunction enjoining Defendant, its directors, officers, employees, agents, successors, heirs and assigns, and all persons in active concert or participation with it, from engaging in, ratifying, or refusing to correct, employment practices which discriminate in violation of Title VII, the ADEA, the PHRA and public policy.

(j)     Order Defendants to institute and implement, and for its employees, to attend and/or otherwise participate in, training programs, policies, practices and programs which provide equal employment opportunities;

(k)     Order Defendant to remove and expunge, or to cause to be removed and expunged, all negative, discriminatory, and/or defamatory memoranda and documentation from Plaintiff's record of employment, including, but not limited, the pre-textual reasons cited for its adverse actions, disciplines, and termination; and

(l)     Awarding extraordinary, equitable and/or injunctive relief as permitted by law, equity and the federal statutory provisions sued hereunder, pursuant to Rules 64 and 65 of the Federal Rules of Civil Procedure.

## JURY TRIAL DEMAND

Demand is hereby made for a trial by jury as to all issues.

15

## CERTIFICATION

I hereby certify that to the best of my knowledge and belief the above matter in controversy is not the subject of any other action pending in any court or of a pending arbitration proceeding, nor at the present time is any other action or arbitration proceeding contemplated.

RESPECTFULLY SUBMITTED,

KOLLER LAW, LLC

Date: May 27, 2026                    By:

David M. Koller, Esquire
Jordan D. Santo, Esquire
2043 Locust Street, Suite 1B
Philadelphia, PA 19103
215-545-8917
davidk@kollerlawfirm.com
jordans@kollerlawfirm.com

*Counsel for Plaintiff*

16